UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRA DICKERT, et al., <br> Plaintiffs, <br> v. <br> SANYO ENERGY (U.S.A.) CORPORATION, et al., <br> Defendants. | Case No. 18-cv-04664-EMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> Docket No. 38 |

## I. INTRODUCTION

Plaintiffs Myra Dickert and Howard Dickert ("Plaintiffs") bring suit against Sanyo Energy (U.S.A) Corporation ("Sanyo Energy"), Sanyo North America Corporation ("Sanyo NA"), and Panasonic Corporation of North America ("Panasonic," and collectively "Defendants") in connection with allegedly defective solar panels manufactured and marketed by Sanyo Energy. Plaintiffs assert claims for breach of express warranty, breach of contract, unjust enrichment, violation of the California Unfair Competition Law, violation of the New Jersey Consumer Fraud Act, and violation of California Consumer Legal Remedies Act ("CLRA").

The Court heard arguments on Defendants' motion to dismiss the First Amended Complaint ("FAC") on March 7, 2019. Docket No. 38 ("Mot."). At the hearing, it became apparent that ambiguity remained as to whether the Court could exercise personal jurisdiction over Panasonic. *See* Docket No. 48 ("Tr.") at 56–69. The Court accordingly ordered the parties to engage in limited jurisdictional discovery. Docket No. 45. Following discovery, the parties submitted supplemental briefing addressing Panasonic's contacts with the state of California. *See* Docket No. 60 ("Pl. Supp. Br."); Docket No. 62 ("Def. Supp. Br."). For the reasons discussed

below, the Court finds that it lacks personal jurisdiction over Panasonic and therefore **GRANTS** Defendants' motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

A.    First Amended Complaint

Plaintiffs allege the following in the FAC. Plaintiffs were interested in purchasing solar panels for their home to "reduce their electric bills, save money, and benefit the environment." FAC ¶ 81. A representative of GeoGenix, an installer of Sanyo panels, assured them the panels "were the best solar panels available on the market," would have "30 years useful life," and "would all but eliminate their electricity bill for 30 years." *Id.* ¶¶ 64, 82, 92. Sanyo provides installers, including GeoGenix, with a specification (or "spec") sheet stating that the panels come with a 20-year power output limited warranty and a 2-year warranty for workmanship. *Id.* ¶ 63. Based on this spec sheet, GeoGenix told Plaintiffs that Sanyo provides a 20-year power output warranty. *Id.* ¶ 65. However, Sanyo did not provide GeoGenix with Sanyo's full, written Limited Warranty at any point; Plaintiffs did not see the Limited Warranty until after this lawsuit was initiated. *Id.* ¶¶ 60, 63; *see* FAC, Exh. A (Limited Warranty).

Plaintiffs relied on GeoGenix's representations about the quality of Sanyo's solar panels and the terms of Sanyo's warranties when they purchased a Sanyo solar panel system from GeoGenix in September 2005. FAC ¶¶ 95–96. They agreed to pay extra for what they believed to be a "premium" product. *Id.* ¶¶ 82–83. GeoGenix installed the Sanyo solar panels. *Id.* ¶¶ 91–94.

"In or about 2016," Power Overhaul, a solar energy contractor engaged by Plaintiffs, conducted an inspection of Plaintiffs solar panels. *Id.* ¶¶ 47, 97. Power Overhaul informed Plaintiffs that "some of their Sanyo panels were not functioning properly" and "the power production of the panels . . . were below the levels stated in the Power Warranty." *Id.* ¶ 97. The failed Sanyo panels were a result of "delamination." *Id.* ¶ 98. Delamination occurs when the laminated components of a solar panel detach because the bond between the plastics and the glass separates. *Id.* ¶ 42. This detachment allows air and moisture to come in to contact with the wires that conduct electricity, creating a safety and fire risk. *Id.* ¶ 51.

Plaintiffs submitted a warranty claim to Sanyo through GeoGenix. *Id.* ¶ 100. Sanyo took

approximately eighteen months to respond to the claim, and only agreed to replace nine of the thirteen delaminated panels. *Id.* ¶ 101. Sanyo explained the remaining four panels would not be replaced because Plaintiffs provided insufficient test data of power degradation to qualify for replacement panels. *Id.* Sanyo refused to conduct the necessary power output tests and required the Plaintiffs to obtain the test data and provide it to Sanyo. *Id.* ¶ 103. Plaintiffs allege that Sanyo put the onus on consumers to conduct power output tests on defective panels as part of a warranty "claims suppression strategy." *Id.*

Throughout the eighteen-month period when Sanyo was processing Plaintiffs' warranty claim, Power Overhaul provided additional photographs to Sanyo demonstrating "delamination throughout many of Plaintiff's panels." *Id.* ¶ 105. Although the FAC does not make it clear, it appears that this delamination manifested in panels other than the initial thirteen that Plaintiffs reported as defective. It also appears that Sanyo did not address these additional delaminated panels when it responded to Plaintiffs' warranty claim.

On July 18, 2018, Plaintiffs sent a letter to Sanyo pursuant to the CLRA informing Sanyo of an alleged violation of California Civil Code § 1770 as well as an alleged breach of warranty. FAC, Exh. D. In the letter, Plaintiffs demanded that Sanyo fix the panel defects within thirty days of receipt of the letter. *Id.* Plaintiffs then filed this suit on August 2, 2018, fifteen days after sending the letter. *See* Docket No. 1. Defendants moved to dismiss the original complaint. Docket No. 30. Instead of litigating the motion, the parties stipulated that Plaintiffs would file an amended complaint. Docket No. 36. The instant motion to dismiss the FAC followed.

B.   Jurisdictional Discovery

At the hearing on March 7, 2019, counsel for Defendants argued that to the extent Plaintiffs' claims hinged on conduct attributable to Panasonic, rather than Sanyo, Plaintiffs had failed to identify any "California-related activity" by Panasonic that would allow the Court to exercise personal jurisdiction over it. Tr. 56:9–17. Since Sanyo NA—a Delaware corporation whose principal place of business was San Diego, California—ceased to exist in 2015 when it was merged into Panasonic, any acts of alleged warranty suppression after 2015 would have been acts committed by Panasonic, incorporated in Delaware with its principal place of business in New

Jersey. FAC ¶ 9–12; *see* Tr. 56:11–17.

To determine whether the Court could exercise personal jurisdiction over Panasonic, the parties were permitted to engage in limited jurisdictional discovery to determine

> (1) who at Panasonic makes decisions regarding warranty claims for solar panels manufactured by Sanyo Energy, including Plaintiffs' warranty claims, and where those decisions were made; and (2) who received Plaintiffs' July 18, 2018 letter and whether they had the authority to process warranty claims.

Docket No. 45 at 3. On May 8, 2019, counsel for Plaintiff deposed Hidenori Oishi, responsible for processing warranty claims for Sanyo solar panels on behalf of Panasonic. *See* Docket Nos. 61–3, 63–1 Exh. A ("Oishi Dep."). Mr. Oishi is based in Wilsonville, Oregon and has been responsible for processing warranty claims for Sanyo panels since 2014. Oishi Dep. 25:6–9. According to Mr. Oishi, all such warranty claims are first processed in Oregon, and then sent to Japan for final approval. *Id.* 37:15–19. No warranty documents are sent for processing to California, and past warranty claims are stored in Oregon. *Id.* at 37:15–19, 31:15–22.

Mr. Oishi explained that most warranty claims are received via email, telephone, or through a Panasonic support website. *Id.* at 50:4–7; *see* Docket No. 63–1, Exh. B (Panasonic support website showing how to reach "HIT Support" for solar warranty claims). Mr. Oishi testified that when Plaintiffs filed their first warranty claim in 2016, it was processed by Panasonic staff working in Oregon. *Id.* at 30:6–10. The Cupertino address had been discontinued as of 2016, when Panasonic shifted its warranty claim operations to Oregon. *Id.* at 22:13–20. Moreover, Plaintiffs sent their July 18, 2018 letter to an address in Cupertino, California that Sanyo had previously used as a claim center for solar panel warranties. *Id.* at 22:9–20. But because the warranty claims operation was no longer in California, Plaintiffs' letter was forwarded to the office of Panasonic Industrial Device Sales North America ("PIDSA") in Mountain View, California, where it was opened by Shauna Peterson, Director of PIDSA. *Id.* at 16:19–17:7. Mr. Oishi testified that Ms. Peterson perceived the letter to be a legal matter and forwarded it to Panasonic's counsel in New Jersey on July 24, 2018. *Id.*; Docket No. 61–1 (Ms. Peterson's email to Mark Degand, Panasonic counsel). Mr. Oishi received a copy of the July 18 letter on July 26, 2018 from his supervisor in New Jersey, who asked him to help Panasonic's legal and risk

4

1 management departments with their response to the letter. Docket No. 61–2.

### III. DISCUSSION

A. Legal Standard

Defendants move to dismiss Plaintiffs' claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. at 2–3. Under Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1042 (N.D. Cal. 2018) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion," and "conflicts between the facts contained in the parties' [evidentiary submissions] must be resolved in [plaintiff's] favor." *Unocal Corp.*, 248 F.3d at 922 (quoting *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). However, the court may not assume the truth of allegations that are contradicted by the evidence. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). "The plaintiff cannot simply rest on the bare allegations of its complaint." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).

In actions where there is no federal statute governing personal jurisdiction, the law of the forum state is applied. *Schwarzenegger*, 374 F.3d at 800. Because California's long-arm jurisdictional statute "is coextensive with federal due process requirements," "the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

5

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

On a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Thus, "a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

B.  Personal Jurisdiction over Panasonic

Defendants argue for dismissal under Rule 12(b)(6) of Plaintiffs' entire complaint on several grounds, including that Plaintiffs' warranty claims are time-barred and that Plaintiffs failed to provide Defendants with pre-suit notice of the breach of warranty claim. Mot. at 1–2. Separately, Defendants argue for dismissal under Rule 12(b)(2) on the ground that all of Plaintiffs claims are directed at Panasonic's conduct, and the Court does not have personal jurisdiction over Panasonic. Mot. at 25. Because the uncontroverted evidence elicited through discovery establishes that Defendants' jurisdictional argument is correct, the Court dismisses this case under Rule 12(b)(2).

1.  Legal Framework

To satisfy constitutional requirements of due process, defendants in a civil action must have a requisite level of minimum contacts with the forum state. *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). "Minimum contacts are shown if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction), or

6

if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quoting *Schwarzenegger*, 374 F.3d at 800–02). Plaintiffs do not argue that Panasonic is subject to general jurisdiction. Therefore, the only inquiry for this Court is whether Panasonic is subject to specific jurisdiction. The Ninth Circuit has established a three-prong test for a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The first prong of this test differs slightly depending on if the case sounds in contract or tort. *Id.* If a case sounds primarily in contract, the inquiry is whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," such as through executing a contract within the forum state. *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If a claim sounds in tort, the first prong asks whether the defendant "purposefully directed his conduct toward a forum state." *Id.* at 803. Purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.*

However, where a case arises fundamentally from a contractual relationship, personal jurisdiction can be evaluated under the "purposeful availment" standard even when some of the claims presented may be tort-based. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). For example, the plaintiff in *Boschetto* bought a car from defendants on an e-commerce auction site. *Id.* at 1014. Plaintiff, a California resident, arranged for the car to be delivered from Wisconsin, where defendants resided. *Id.* Soon after receiving the car, the plaintiff realized that the defendants had misrepresented its quality and provenance, and brought claims for breach of

7

contract, violation of the California Consumer Protection Act, misrepresentation, and fraud. *Id.* at 1015. Even though some of the plaintiff's causes of action were torts, the Ninth Circuit held that his case as a whole "sound[ed] primarily in contract" and therefore applied the "'purposeful availment' standard." *Id.* at 1016.

In this case, as in *Boschetto*, the majority of Plaintiffs' claims are contractual: claims 1–3 allege breach of express warranty based on affirmation or promise, claims 4–6 allege breach of an express written warranty, claims 7–9 allege breach of warranty under the Magnuson-Moss Warranty Act, and claims 10–13 seek specific performance. *See* FAC ¶¶ 188–322. The remaining claims for unjust enrichment (13–14) and for violation of state consumer protection laws (15–18) could stand on their own as tort claims, but are premised on the contractual relationship between the parties. Accordingly, the case sounds primarily in contract and a purposeful availment analysis is most appropriate. *See, e.g.*, *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665–66 (9th Cir. 2011) (holding that the "purposeful availment analysis applies to the entire suit" involving both a breach of contract claim and a fraud claim because "the alleged fraud [wa]s merely the representation in the contract that gave rise to the breach"); *Ponomarenko v. Shapiro*, No. 16-CV-02763-BLF, 2017 WL 1709335, at *5 (N.D. Cal. May 3, 2017) (because plaintiff's tort "claims for intentional and negligent misrepresentation, false promise, and unfair competition are premised on his alleged contractual relationship with [defendant]," plaintiff "must satisfy the purposeful availment test").

2. <u>Purposeful Availment</u>

Under a purposeful availment analysis, a defendant is subject to specific personal jurisdiction if they "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).

Plaintiffs here have not met their burden to establish personal jurisdiction. As an initial matter, all of the misconduct alleged in the FAC occurred after the Sanyo entities merged into Panasonic in 2015. *See* FAC ¶ 10 ("SANYO NA ceased to exist on April 1, 2015, when it was merged into Panasonic."). Plaintiffs did not submit their warranty claims until 2016, so their

breach of warranty and related claims post-date the merger. *See id.* ¶ 97 (alleging that panel defects were first discovered "[i]n or about 2016"); Tr. 47:24–48:20 (Plaintiffs' counsel acknowledging that Plaintiffs do not allege that Sanyo was aware that its solar panels were defective at the time of sale or that Sanyo intended to suppress warranty claims from the outset.). This means that the purposeful availment analysis must center on Panasonic's conduct.

However, the evidence produced through jurisdictional discovery shows that Panasonic did not process warranty claims for Sanyo solar panels within California. As of 2016, all warranty claims for Sanyo solar panels were processed by Panasonic employees in Oregon. Oishi Dep. 22:18–20. Mr. Oishi testified that there was no reason for warranty claims to be routed through any offices in California because Panasonic's "process is in Oregon and we get the approval and final judgment in Japan. So there's no connection for us to send the documents to California." *Id.* 37:15–19. Panasonic's warranty operations are connected to a limited set of localities, of which California is not one: New Jersey, Panasonic's principal place of business within the United States; Oregon, where Panasonic processes warranty claims for Sanyo solar panels; and Japan, where final decisions on warranty claims are made. Unsurprisingly, then, Panasonic did not process Plaintiffs' particular warranty claims in California. Plaintiffs' 2016 claim was received in New Jersey and processed in Oregon by Mr. Oishi and his staff. *Id.* 29:12–30:24. When Plaintiffs attempted to mail their July 18, 2018 letter to a closed Sanyo office in Cupertino, it was forwarded to an active Panasonic office in Mountain View. *Id.* 60:6–9. The director of the Mountain View office "didn't know what to do with [the] letter" and forwarded it to Panasonic counsel Mark Degand in New Jersey. Oishi Dep. 17:2–7. That is, Panasonic's Mountain View office did nothing more than pass the July 18 letter to the appropriate recipients elsewhere within the Panasonic organization.

Notwithstanding the evidence that no part of Panasonic's warranty operations take place in California, Plaintiffs argue that this Court has specific personal jurisdiction over Panasonic under two more attenuated theories: (1) Panasonic inherited Sanyo's contacts with California and is subject to personal jurisdiction under a successor theory, and (2) Panasonic's decision to discontinue processing of Sanyo solar warranties at former Sanyo locations in Cupertino and San

9

1  Diego itself constituted the type of affirmative conduct within California that would confer the

2  Court with personal jurisdiction. Pl. Supp. Br. at 2–3. Neither theory has merit.

Plaintiffs' successor theory fails because the alleged warranty suppression did not take place until *after* the Sanyo entities had merged into Panasonic. "The contacts of a predecessor can be attributed to a successor in interest if that successor would be liable for *the actions of the predecessor* under the law of the forum." *Galen Inv. Advisors, Inc. v. Alcatel*, No. C 02-2774 MJJ, 2002 WL 31319900, at *5 (N.D. Cal. Oct. 10, 2002) (emphasis added). Personal jurisdiction over a successor company only obtains where (1) "the court would have had personal jurisdiction over the predecessor" and (2) "the successor company effectively assumed the subject liabilities of the predecessor". *Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *3 (N.D. Cal. Feb. 11, 2016) (citation omitted). Plaintiffs have not plausibly alleged any liability on the part of Sanyo, the predecessor, because their claims center on alleged warranty suppression beginning in 2016 or later. *See* FAC ¶¶ 97–106, 116–123; Tr. 47:24–48:20. By 2016, the Sanyo entities had ceased to exist and were fully merged into Panasonic's North America division. FAC ¶¶ 9–11. Panasonic is not subject to personal jurisdiction under a successor theory because Plaintiffs are unable to allege any unlawful conduct by Sanyo for which Panasonic would inherit liability.

Plaintiffs' second argument that Panasonic's decision to close Sanyo's California-based warranty processing centers amounts to purposeful availment of the forum state likewise fails. Plaintiffs offer no evidence that Panasonic's decision to close the Sanyo offices was made within California. Indeed, the reasonable inference from the jurisdictional discovery is that such a decision would have been made in New Jersey or Japan. Moreover, Plaintiffs have not alleged that the decision to close the Sanyo office had anything to do with the alleged warranty suppression policy of Panasonic. There is no causal harm to Plaintiffs. In any event, Plaintiffs' argument turns the meaning of "purposeful availment" on its head. Rather than "allow[ing] or promot[ing] the transaction of business within the forum state," an out-of-state defendant's decision to relocate operations away from the forum state does the exact opposite—it *ceases* the transaction of business within the forum state. *Boschetto*, 539 F.3d at 1016.

Having established that Panasonic did not purposefully avail itself of the laws of California in processing warranty claims for Sanyo solar panels, the personal jurisdiction inquiry ends. *See id.* ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**. The Clerk of the Court is directed to enter judgment in accordance with this Order and close the file in this case.

This order disposes of Docket No. 38.

**IT IS SO ORDERED**.

Dated: July 23, 2019

_____
EDWARD M. CHEN
United States District Judge